[Cite as *State ex rel. WFAL Constr. v. Buehrer*, 2013-Ohio-5700.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio ex rel. WFAL Construction, :

       Relator, :

                                      No. 12AP-996

v. :

                                (REGULAR CALENDAR)

Steve Buehrer[,] Administrator :
Bureau of Workers' Compensation,

                          :

       Respondent. :

                          :

D E C I S I O N

Rendered on December 24, 2013

*William W. Johnston,* for relator.

*Michael DeWine*, Attorney General, and *John R. Smart,* for respondent.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

KLATT, P.J.

{¶ 1} Relator, WFAL Construction, commenced this original action in mandamus seeking an order compelling respondent, Administrator of the Ohio Bureau of Workers' Compensation, to vacate the September 18, 2012 order that denied relator's protest of audit findings for the period January 1 through December 31, 2009, and to enter an order granting relator's protest.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, we referred this matter to a magistrate who issued a decision, including findings of fact and conclusions of law, which is appended hereto. The magistrate found that there

was some evidence supporting the administrator's decision that at least 10 of the 20 statutory factors had been satisfied, which indicated the existence of an employee/employer relationship between relator and those performing construction work on relator's behalf. Therefore, the magistrate determined that the administrator did not abuse his discretion and the magistrate has recommended that we deny relator's request for a writ of mandamus.

{¶ 3} Relator has filed objections to the magistrate's decision.[1] We interpret relator's brief as asserting three objections. In its first objection, relator contends that the magistrate erred in finding some evidence to support the administrator's determination that persons performing construction work were required to comply with instructions from relator, which is identified as statutory factor No. 1. Relator argues that because Paul Hendershot (an employee of Ohio Fresh Eggs and not relator) was the sole on-site supervisor for the project, only he controlled the manner and method of performing services. However, relator ignores testimony from Gary Buyer (relator's owner and principal) that he too provided instructions that workers were required to follow. Therefore, we agree with the magistrate that there was some evidence supporting the administrator's determination that the first statutory factor was satisfied. Accordingly, we overrule relator's first objection.

{¶ 4} In its second objection, relator contends that there was no evidence to support the administrator's finding that factor Nos. 2, 6, and 8 were satisfied. Relator contends that only arguments from the administrator's counsel were noted by the magistrate as supporting the administrator's findings. We disagree.

{¶ 5} Factor No. 2 considers whether the persons performing the construction work are integrated into the regular functioning of relator's business. It is undisputed that the workers at issue performed the vast majority of the construction work for relator's business during the audit year in question. Relator points to nothing in the record that contradicts this basic fact. Therefore, there is some evidence that these workers are

---

[1] We note that relator has also filed a reply brief in response to the administrator's memorandum contra relator's objections. Relator adds objections and arguments in its reply that are not contained in its original objections. This court's rules do not permit such a filing. Therefore, we will not consider the objections and arguments contained therein. Respondent's December 2, 2013 motion to strike is granted to that extent.

integrated into the regular functioning of relator's business, thereby satisfying factor No. 2.

{¶ 6} Factor No. 6 considers whether the persons performing the construction work were paid for their services on a regular basis, such as hourly, weekly, or monthly. Relator contends there is no evidence to support this statutory factor. We disagree.

{¶ 7} Gary Buyer testified that he paid at least some of these workers weekly. Citing this same testimony, the stipulation submitted to the magistrate also indicates that at least some of these workers were paid weekly based on hours worked. Therefore, there is some evidence supporting the administrator's determination that statutory factor No. 6 has been met.

{¶ 8} Factor No. 8 considers whether the workers realize a profit or suffer a loss as a result of the services provided. Relator claims there was no evidence to establish this factor. Again, we disagree. There was evidence that at least some of the workers performing services for relator were paid for their labor on a regular basis based on the hours they worked. Workers that are paid hourly for their labor are not at risk of a financial loss. Therefore, the administrator did not abuse its discretion in finding that factor No. 8 was satisfied.

{¶ 9} Because there is some evidence to support the administrator's decision, the magistrate correctly found that the administrator did not abuse his discretion in finding that factor Nos. 2, 6, and 8 were satisfied. Therefore, we overrule relator's second objection.

{¶ 10} In its third and final objection, relator contends that the magistrate erred when he found some evidence to support the administrator's determination that factor No. 10 was satisfied. Factor No. 10 considers whether the workers at issue have the right to end the relationship with relator without incurring any contractual liability. Relator argues that because there is no written contract between relator and these workers, this factor cannot be satisfied.

{¶ 11} Relator's argument is flawed because relator misconstrues the meaning of factor No. 10. This factor does not require a written contract. An agreement to provide labor in exchange for money is a contract even though not in writing. Factor No. 10 indicates that if a worker would be liable for terminating the working relationship based

upon a contract, it might support a determination that the worker was an independent contractor and not an employee.  If, on the other hand, a worker would not incur any contractual liability for ending the relationship, it might suggest an employer/employee relationship.

{¶ 12} Here, there is no evidence that the workers at issue would be personally liable for breach of contract if they ended the working relationship with relator. Therefore, the administrator did not abuse its discretion in finding that workers would not incur contractual liability for ending the relationship, thereby satisfying factor No. 10. Accordingly, we overrule relator's third objection.

{¶ 13} Following an independent review of this matter, we find that the magistrate has properly determined the facts and applied the appropriate law.  Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein.  In accordance with the magistrate's decision, we deny relator's request for a writ of mandamus

*Respondent's motion to strike granted;*
*objections overruled; writ of mandamus denied.*

CONNOR and O'GRADY, JJ., concur.

———————————

## APPENDIX

### IN THE COURT OF APPEALS OF OHIO

### TENTH APPELLATE DISTRICT

State of Ohio ex rel. WFAL Construction,      :

        Relator,      :
                                                 No. 12AP-996

v.      :

Steve Buehrer[,] Administrator      :
Bureau of Workers' Compensation,

        Respondent.      :

                                               (REGULAR CALENDAR)

---

### MAGISTRATE'S DECISION

#### Rendered on September 13, 2013

---

*William W. Johnston,* for relator.

*Michael DeWine*, Attorney General, and *John R. Smart,* for respondent.

---

### IN MANDAMUS

{¶ 14} In this original action, relator, WFAL Construction ("WFAL" or "relator") requests a writ of mandamus ordering respondent, Administrator of the Ohio Bureau of Workers' Compensation ("administrator"), to vacate the September 18, 2012 order of the administrator's designee that affirms the July 26, 2012 order of the adjudicating committee that denies relator's protest of audit findings for the period January 1 through December 31, 2009, and to enter an order granting relator's protest.

Findings of Fact:

{¶ 15} 1. WFAL is a sole proprietorship owned by Gary Buyer. In 2009, WFAL contracted with Ohio Fresh Eggs ("OFE") to repair some storm damaged barns.

{¶ 16} 2. In early 2010, WFAL was audited by respondent for the period January 1 through December 31, 2009. Auditor Penny J. Young of the Ohio Bureau of Workers' Compensation ("bureau") Underwriting and Premium Audit Department conducted the audit.

{¶ 17} 3. In her July 2010 audit report, Young determined that the persons hired by Buyer to perform the work for OFE were Buyer's employees and not independent contractors. Buyer had not reported to the bureau the payroll relating to those he had hired to perform the work at OFE. Consequently, the audit report indicated that WFAL owed back premiums for calendar year 2009.

{¶ 18} 4. During the audit, Young completed bureau form UA-2 captioned "Independent Contractor/Employee Questionnaire." The form presents 20 questions requiring a "yes" or "no" answer. The questions on the form track the criteria listed at R.C. 4123.01(A)(1)(c). The form is used to determine whether a "person" is an independent contractor or an employee of the bureau's risk. On the form completed by Young on March 22, 2010, 15 questions were answered "yes" and 5 questions were answered "no."

{¶ 19} 5. In July 2010, WFAL filed a protest of the audit findings for calendar year 2009.

{¶ 20} 6. On July 26, 2012, WFAL's protest was heard by the bureau's three-member adjudicating committee. On August 30, 2012, by unanimous vote, the committee mailed an order denying the protest.

{¶ 21} The committee's order explains:

> **Background Facts and Issues Presented:** The employer is protesting audit findings for the period January 1, 2009 to December 31, 2009. The employer objected to the pick up of wages for workers considered by the employer to be independent contractors.
>
> * * *
>
> **Employer's Position:**
> The employer's representative stated a 1999 audit was completed by a Bureau auditor. That audit was a "no findings" audit. The audit did not pick up the independent contractors. The employer had signed contracts with the independent contractors. In 2009, the audit reversed the

1999 audit and picked up all subcontractors as employees. The IRS has audited the employer and did not pick up the independent contractors. The workers also carried their own workers compensation coverage. The company is a framing contractor. The independent contractors are carpenters who work for other contractors as well. The employer provides no tools and equipment to the independent contractors. The materials are not provided by the employer. There are lead carpenters who make sure the work is properly done. Mr. Buyer does not own the worksites. The only supervision done was to inspect the finished product.

**Bureau's Position:**
The Bureau's representative stated the employer was working at an egg farm that was damaged in a storm. This employer did some roofing and sheet metal work in 2009. The workers had to sign a timesheet. The workers were paid weekly. The workers do not invoice the employer. The independent contractors picked up did not have their own workers compensation coverage. Mr. Buyer had a ledger which the Bureau used to determine wages. Mr. Buyer does go out to the work site to check work progress. He doesn't do the work personally. On the questionnaire, the employer met 15 of the 20 criteria. The workers had to follow instructions from WFAL. Some workers were skilled labor. Workers were paid and supervised by WFAL. Workers could not subcontract the work to other subcontractors. General contractor provided materials. Employer can hire and discharge the workers.

**Findings of Fact and Conclusion of Law:**
The Committee considered all of the testimony at hearing, as well as the various documents provided by all parties and found that for purposes of the period that was audited, the following factors demonstrate an employee/employer relationship. 1) The individuals were required to comply with instruction from either the owner or an onsite lead carpenter; 2) the services provided by these workers are integrated into the regular functioning of this employer as they do all of the work; 3) the named persons on the various timesheets and logs performed the work personally; 4) the individuals were paid by the employer; 5) records that were available to the auditor showed that the same workers performed work repeatedly for the employer; 6) the individuals were paid for the specific number of hours worked on a weekly basis; 7) as the employer had a supervisor or foreman on the worksite if he was not present

himself, the Committee finds that the order of work was determined by the employer; 8) given the hourly payments, the workers would not realize a profit or loss as a result of the services provided; 9) the employer has the right to discharge any of these individuals; and 10) there is no indication that any of the individuals would incur liability if the relationship ended.

The Committee recognizes that there are certain factors that might support independent contractor status in this case including: 1) These workers may not have any particular training; 2) are not required to work particular hours; 3) are not required to devote full time to the business of the employer; 4) furnish some of their own tools; 5) do not incur expenses that are reimbursed by the employer; and 6) may do similar work for others.

The Committee is not prepared to find that where the work is performed and that the property owner provides materials would be at all determinative in this case. Specifically, whether employee or independent contractor, it is obvious that construction work will be performed at the property site.

Finally, the Committee notes that in 2009 a small medical only claim was filed against this risk. The bureau's Audit Policy provides that if an employer does not appeal a claim allowance for a 1099 recipient and the claim is allowed, the auditor must pick up the wages. In 2010, a more significant lost-time claim that was contested by the employer was ultimately allowed by both a DHO and an SHO, who found the individual was an "employee" for workers' compensation purposes.

Based upon all the foregoing, the employer's protest is DENIED and the audit findings upheld. The workers met at least ten of the criteria specified under RC 4123.01(A)(1)(c) as specifically enumerated above. The Committee also notes that any changes made by the employer post audit would not impact the period at issue.

(Emphasis sic.)

{¶ 22} 7. WFAL administratively appealed the order of the adjudicating committee to the administrator's designee pursuant to R.C. 4123.291.

{¶ 23} 8. Following a September 18, 2012 hearing that was recorded and transcribed for the record, the administrator's designee mailed an order on October 11, 2012 that affirms the order of the adjudicating committee. The September 18, 2012 order of the administrator's designee explains:

> At issue before the Administrator's Designee was the employer's protest of audit findings for the period January 1, 2009, to December 31, 2009. Specifically, the employer objected to the inclusion of payroll for workers the employer considered independent contractors.
>
> * * *
>
> The Administrator's Designee adopts the statement of facts contained in the order of the Adjudicating Committee.
>
> Based on the testimony and other evidence presented at the hearing, the Administrator's Designee affirms the decision, findings, and rationale set forth in the order of the Adjudicating Committee.

{¶ 24} 9. On November 28, 2012, relator, WFAL Construction, filed this mandamus action.

Conclusions of Law:

{¶ 25} R.C. 4123.01 defines "employee" for purposes of the workers' compensation system.

{¶ 26} R.C. 4123.01(A)(1)(c) sets forth 20 criteria to be used in determining whether a person who performs labor or provides services pursuant to a construction contract is an employee or an independent contractor.

{¶ 27} R.C. 4123.01(A)(1)(c) states:

> Every person who performs labor or provides services pursuant to a construction contract, as defined in section 4123.79 of the Revised Code, if at least ten of the following criteria apply:
>
> (i) The person is required to comply with instructions from the other contracting party regarding the manner or method of performing services;
>
> (ii) The person is required by the other contracting party to have particular training;

(iii) The person's services are integrated into the regular functioning of the other contracting party;

(iv) The person is required to perform the work personally;

(v) The person is hired, supervised, or paid by the other contracting party;

(vi) A continuing relationship exists between the person and the other contracting party that contemplates continuing or recurring work even if the work is not full time;

(vii) The person's hours of work are established by the other contracting party;

(viii) The person is required to devote full time to the business of the other contracting party;

(ix) The person is required to perform the work on the premises of the other contracting party;

(x) The person is required to follow the order of work set by the other contracting party;

(xi) The person is required to make oral or written reports of progress to the other contracting party;

(xii) The person is paid for services on a regular basis such as hourly, weekly, or monthly;

(xiii) The person's expenses are paid for by the other contracting party;

(xiv) The person's tools and materials are furnished by the other contracting party;

(xv) The person is provided with the facilities used to perform services;

(xvi) The person does not realize a profit or suffer a loss as a result of the services provided;

(xvii) The person is not performing services for a number of employers at the same time;

(xviii) The person does not make the same services available to the general public;

(xix) The other contracting party has a right to discharge the person;

(xx) The person has the right to end the relationship with the other contracting party without incurring liability pursuant to an employment contract or agreement.

{¶ 28} By enactment of the statute, the legislature intended to substitute a statutory test for the traditional common-law standard. *Slauter v. Klink,* 2d Dist. No. 18150, (Aug. 18, 2000).

{¶ 29} Here, the adjudicating committee analyzed the 20 criteria set forth in the statute and determined that at least 10 of the criteria were met showing the existence of an employee/employer relationship. The committee also determined that 6 of the criteria might support independent contractor status.

{¶ 30} Here, relator challenges the committees findings on the 10 criteria used to support an employee/employer relationship. If relator can successfully challenge even one of the criteria, the bureau's final determination is flawed. *Slauter.*

### Statutory Criteria i—Corresponding to Committee Factor No. 1

{¶ 31} R.C. 4123.01(A)(1)(c)(i) provides:

The person is required to comply with instructions from the other contracting party regarding the manner or method of performing services.

{¶ 32} As to Factor No. 1, the committee held:

The individuals were required to comply with instruction from either the owner or an onsite lead carpenter.

{¶ 33} According to relator, the committees finding is not supported by the evidence. WFAL points to Buyer's hearing testimony:

Q. Did you tell the people at the egg farm how to do what you wanted them to do or the method that they would have to use to do it?

A. No. They would tell me. The supervisor, Paul Hendershot.

Q. Who is Paul Hendershot?

A. He was Ohio Fresh Eggs construction supervisor.

Q. He did not work for you?

A. No, he did not.

Q. He was their construction supervisor on this job site?

A. Yes.

(Tr. 7-8.)

{¶ 34} WFAL also points to Young's hearing testimony:

Q. Penny, do you have any evidence that Paul Hendershot did not instruct these people as to what they were supposed to do?

A. I was not on the job site, no.

Q. Okay. And in your opening statement you said that the egg farm, Ohio Fresh Eggs, let's make sure I do it right, supplied the materials and the on-site supervisor, was that Paul Hendershot?

A. I'm just basing that off of what Gary said was that Paul Hendershot was the supervisor for the egg farm.

(Tr. 29.)

{¶ 35} According to relator, it is undisputed that Buyer provided no instruction regarding the manner or method of performing services and that only OFE provided instructions through its construction supervisor Paul Hendershot who was an employee of OFE. (Relator's brief, at 11.)

{¶ 36} Here, the bureau points out that, during the hearing, Young testified:

So WFAL was contracted to provide the labor and then Ohio Fresh Eggs bought all of the materials and they had an on-site supervisor. WFAL was given a work order, which the people were supposed to follow in order to get that barn ready for the next project.

(Tr. 22.)

{¶ 37} In her audit report, Young states "1) individual is to follow instruction on work order provided to Gary Buyer."

{¶ 38} Moreover, at the hearing, Buyer testified:

> Q. You heard the allegation that you gave the instructions of these people as to what they're to do. What was the truth, what was the fact, who told them what to do and when to do it?
>
> A. Well, it would be the egg farm would tell me -- he would tell all of us, like, Paul would come some days and be wanting of something. I would be on another site. Paul would come and say, well, we have a crisis in this barn, the roof caved in. He would pull my guys off and go fix that.
>
> Q. So he would talk to your guys?
>
> A. Yes.
>
> Q. And tell them what to do?
>
> A. Yes, as if they worked for him.
>
> Q. And other times he would call you and say --
>
> A. Yes, and I would have to direct.
>
> Q. He would like your people to do something?
>
> A. Yes.
>
> Q. All right. So he was not disinvolved here, he was actively involved with this?
>
> A. As much as I was, yes.
>
> Q. He was the on-site supervisor for Ohio Fresh Eggs?
>
> A. Yes.

(Tr. 32-33.)

{¶ 39} Respondent administrator is the exclusive evaluator of the weight and credibility of the evidence. In mandamus, this court does not reweigh the evidence for respondent.

{¶ 40} Clearly, the evidence and testimony cited by both relator and respondent can be easily reviewed as supportive of a finding that both Buyer and Hendershot

instructed the workers regarding the manner or method of performing services. Accordingly, the committee's finding that statutory criteria i was met is supported by some evidence and relator's challenge here must fail.

### Statutory Criteria iii—Corresponding to Committee Factor No. 2

{¶ 41} R.C. 4123.01(A)(1)(c)(iii) provides:

> The person's services are integrated into the regular functioning of the other contracting party.

{¶ 42} As to Factor No. 2, the committee held:

> [T]he services provided by these workers are integrated into the regular functioning of this employer as they do all of the work.

{¶ 43} According to relator, the committee finding is not supported by the evidence. WFAL points to Buyer's hearing testimony:

> Q. No. iii, "The person's services are integrated into the regular functioning of the other contracting party." Do you integrate people who work with you into your regular functions?
>
> A. No, I do not. It is an as-needed basis.
>
> Q. Okay. Like, for example, if you hire somebody who does insulation and the insulation work is done, then do you move them over to a painter or a carpenter?
>
> A. No, they're job specific.

(Tr. 8-9.)

{¶ 44} Here, the bureau points to the finding of the adjudicating committee that the workers hired by Buyer "do all of the work." (Respondent's brief, at 8.) That is, the workers performed all the tasks required under WFAL's contract with OFE. According to the bureau:

> At hearing, no evidence was offered to the contrary. When asked, Buyer misunderstood this question and instead answered that his workers were job specific—he would not hire someone to install insulation then have them paint.

(Respondent's brief, at 8.)

{¶ 45} The magistrate agrees with the bureau's position. Buyer's testimony that each worker had a specific job is not responsive to the issue. Accordingly, the committee's finding that statutory criteria iii was met is supported by some evidence, and relator's challenge here must fail.

### Statutory Criteria iv—Corresponding to Committee Factor No. 3

{¶ 46} R.C. 4123.01(A)(1)(c)(iv) provides:

> The person is required to perform the work personally.

{¶ 47} As to Factor No. 3, the committee held:

> [T]he named persons on the various timesheets and logs performed the work personally.

{¶ 48} According to relator, the committee finding is not supported by the evidence. WFAL points to Buyer's hearing testimony:

> Q. Okay. Then No. iv, "The person is required to perform the work personally." When you ask somebody to paint, do you say I want only this person to paint or do you ask them to bring somebody who can paint? How does that work?
>
> A. They can bring as many people as they need. Osman is actually my painter and insulator that I use.
>
> Q. When you use Osman, do you say only Osman can do this job?
>
> A. No, I don't.
>
> Q. Can he bring or substitute somebody else instead of himself?
>
> A. Yes.
>
> Q. Can he bring some other people to do it?
>
> A. And he has done.

(Tr. 9.)

{¶ 49} As the bureau points out here, the audit found that "4) [i]ndividuals cannot sublet their job to others—they are paid hourly to do labor themselves."

{¶ 50} Also, the record contains a document captioned "WFAL's Supplemental Answers to '20 Questions.' "  In that document, WFAL states:

> A contract laborer may, with approval from WFAL substitute itself when necessary, but the new contract laborer should have the requisite capabilities.

{¶ 51} In the magistrate's view, given that a substitution required WFAL's approval, the adjudicating committee could hold that the work was to be done personally by the workers hired by Buyer.  Thus, the committee's finding that criteria iv was met is supported by some evidence and relator's challenge here must fail.

### Statutory Criteria v—Corresponding to Committee Factor No. 4

{¶ 52} R.C. 4123.01(A)(1)(c)(v) provides:

> The person is hired, supervised, or paid by the other contracting party.

{¶ 53} As to Factor No. 4, the committee held:

> [T]he individuals were paid by the employer.

{¶ 54} Relator concedes that evidence supports the committee's finding as to Factor No. 4.  (Relator's brief, at 13.)  Accordingly, the magistrate finds that statutory criteria v is supported by the record.

### Statutory Criteria vi—Corresponding to Committee Factor No. 5

{¶ 55} R.C. 4123.01(A)(1)(c)(vi) provides:

> A continuing relationship exists between the person and the other contracting party that contemplates continuing or recurring work even if the work is not full time.

{¶ 56} As to Factor No. 5, the committee held:

> [R]ecords that were available to the auditor showed that the same workers performed work repeatedly for the employer.

{¶ 57} According to relator, the committee finding is not supported by the evidence.  WFAL points to Buyer's hearing testimony:

Q. Do you say like to Osman that he'll work for you no matter what or even if there is not -- it says, "or contemplates continuing or recurring work even if the work is not full time." How does that work?

A. I don't understand that one.

Q. Okay. Is he free to work for somebody else?

A. Yes. Definitely. And he does.

Q. So when he's not doing work for you, he's working for other people?

A. Yes.

Q. Okay. How about other people that were on that egg farm job, when they didn't have work for you, did you say stay with me, I'll find something or do they go on their own and find something on their own?

A. No, they were all free to go. When I run out of work or something happened and we couldn't' work, they would go elsewhere.

(Tr. 10-11.)

{¶ 58} Here, the bureau points to Buyer's testimony:

A. A lot of them did work for me because I paid every week and I had a lot of work at the time.

(Tr. 18.)

{¶ 59} Also, Buyer testified that the workers he hired did not have workers' compensation coverage during the period of the audit.

{¶ 60} According to relator, the bureau presented no evidence to contradict Buyer's testimony. However, that Buyer paid his workers every week indicates that his workers worked for him repeatedly. Thus, the committee's finding that statutory criteria vi was met is supported by some evidence, and relator's argument must fail.

**Statutory Criteria xii—Corresponding to Committee Factor No. 6**

{¶ 61} R.C. 4123.01(A)(1)(c)(xii) provides:

> The person is paid for services on a regular basis such as hourly, weekly, or monthly.

{¶ 62} As to Factor No. 6, the committee held:

> [T]he individuals were paid for the specific number of hours worked on a weekly basis.

{¶ 63} According to relator, the committee finding is not supported by the evidence.  WFAL points to Buyer's testimony:

> Q. How did you pay these people?
>
> A. Mostly -- well, I paid every week, but some were hourly, some were by man hour and some were contracted.
>
> Q. When it's contracted, is that a flat fee?
>
> A. Yes.
>
> Q. When you do a flat fee, does somebody give you a bid and say, I'll do this work for x amount of dollars?
>
> A. Yes.
>
> Q. Is that how it works?
>
> A. Yes.
>
> Q. If it actually takes them more time than the bid, what happens with that?
>
> A. Then they would lose money.
>
> Q. Okay.
>
> A. From their original bid.
>
> Q. If they underbid, that responsibility for the difference is theirs?
>
> A. Yes. I couldn't pay them any extra. There's only X amount of dollars to work with.

(Tr. 15-16.)

{¶ 64} According to relator, the bureau "did not consider the flat fee contracts or flat weekly payments. The BWC ignored this evidence and ruled that <u>everyone</u> was paid by the hours worked." (Emphasis sic.; Relator's brief, at 15-16.)

{¶ 65} In response, the bureau asserts here that "WFAL concedes it hires and pays the workers weekly, based on hourly wages and based on time sheets, not invoices. (Respondent's brief, at 10.)

{¶ 66} Assuming, that "some" of the workers hired by WFAL "were contracted" as Buyer testified, nevertheless, WFAL does concede that, other than the contract workers, the hired workers were paid weekly based on hours worked, as submitted on time sheets, not invoices. Thus, there was clearly some evidence to support the committee's finding that "6) the individuals were paid for the specific number of hours worked on a weekly basis." Relator's challenge here to the committee's finding as to Factor No. 6 must fail.

### Statutory Criteria x—Corresponding to Committee Factor No. 7

{¶ 67} R.C. 4123.01(A)(1)(c)(x) provides:

> The person is required to follow the order of work set by the other contracting party.

> As to Factor No. 7, the committee held:

> [A]s the employer had a supervisor or foreman on the worksite if he was not present himself, the Committee finds that the order of work was determined by the employer.

{¶ 68} Relator contends that the committee finding is not supported by the evidence. Relator points out that it was undisputed that Paul Hendershot was the supervisor on the job for OFE. Relator also points to Buyer's testimony:

> Q. Who set the order of work?

> A. That would be Ohio Fresh Egg, Paul Hendershot.

> Q. Did you set the order of work?

> A. No. Paul would tell me what needed to be done and when it needed to be done by.

(Tr. 13-14.)

{¶ 69} The bureau disagrees with relator's contention.  Here, the bureau points out that the audit found that "1) [i]ndividual is to follow instruction on work order provided to Gary Buyer."  Also, auditor Young testified "WFAL was given a work order, which the people were supposed to follow in order to get that barn ready for the next project."  (Tr. 22.)

{¶ 70} During the hearing before the committee, bureau legal advisor Richard Blake argued:

> The egg farm would give [Buyer] instructions and then he would give instructions to the people that he hired. They didn't just service in a vacuum and there was no interaction between the two. You know, there may be varying degrees of control with each of these people, but at the end of the day, [Buyer] was the one, he said he could hire and fire. He required them to do certain kind of duties. So with respect to this first thing, they weren't taking their instructions directly from the egg farm. They were hired by him and they were brought in to follow the parameters that were set forth by him.

(Tr. 24-25.)

{¶ 71} Also, Buyer testified, as previously noted, that Hendershot would "pull my guys off and go fix that" when there was a "crisis" such as when a barn roof caved in.  (Tr. 32-33.)

{¶ 72} It is the bureau that weighs the evidence.  Even if it can be argued that the evidence was subject to interpretation, there was some evidence supporting the committee's finding as to Factor No. 7.  Thus, relator's argument must fail.

### Statutory Criteria xvi—Corresponding to Committee Factor No. 8

{¶ 73} R.C. 4123.01(A)(1)(c)(xvi) provides:

> The person does not realize a profit or suffer a loss as a result of the services provided.

{¶ 74} As to Factor No. 8, the committee held:

> [G]iven the hourly payments, the workers would not realize a profit or loss as a result of the services provided.

{¶ 75} Relator challenges the committee's finding by pointing to evidence of the arrangement between WFAL and Osman Rodriguez.  Relator points to the testimony of Buyer's regarding Osman Rodriguez:

Q. A man like Osman, if he bids on a job and it takes him longer, he would eat the difference; is that correct?

A. Yes, it is.

Q. So he would suffer a loss?

A. Yes.

Q. If he bids on it and gets it done quicker, does he pay you back any money?

A. No, it's a set price.

(Tr. 17-18.)

{¶ 76} Relator also points to the testimony of Osman Rodriguez who was called to testify by WFAL.  In its brief, WFAL summarizes the testimony:

Mr. Rodriguez testified: 1) that he owns his own company; 2) that he supplied his own tools and equipment; 3) that he works for other people besides WFAL, such as Aguilar Painting; 4) that he bids on jobs and suffers the loss if he bids too low and makes a profit if he completes the work under cost; 5) that he often works with WFAL under a written agreement; 6) that he would invoice WFAL for his work and Ohio Fresh Egg would then decide how much of that invoice Ohio Fresh Egg would pay; 7) that WFAL would only pay Osman Rodriguez what Ohio Fresh Egg paid WFAL.

(Relator's brief, at 17.)

{¶ 77} In response, the bureau argues:

WFAL attempts to show an independent contractor relationship through the testimony of Osman Rodriguez, but that testimony was limited to Mr. Rodriguez's relationship with WFAL -- and not any other workers' relationship with WFAL -- and the evidence does not indicate that arrangement Mr. Rodriguez describes was the arrangement in place in 2009. * * * In fact, the payroll records of WFAL do not show any payments to Osman Rodriguez in 2009 * * *.

(Respondent's brief, at 10.)

{¶ 78} The magistrate agrees with the bureau.  Even if WFAL proved that it had an independent contractor relationship with Osman Rodriguez, that alone does not flaw the committee's finding as to Factor No. 8.  Thus, relator's argument must fail.

### Statutory Criteria xix—Corresponding to Committee Factor No. 9

{¶ 79} R.C. 4123.01(A)(1)(c)(xix) provides:

> [T]he other contracting party has a right to discharge the person.

> As to Factor No. 9, the committee held:

> [T]he employer has the right to discharge any of these individuals.

{¶ 80} According to relator:

> Relator's evidence on this criteria was that he had the right to discharge people if it was a quality issue or a time frame issue. * * * Therefore, Relator agrees with this point.

(Emphasis sic.; Relator's brief, at 18.)

{¶ 81} Given relator's position here on committee Factor No. 9, the committee's finding must stand.

### Statutory Criteria xx—Corresponding to Committee Factor No. 10

{¶ 82} R.C. 4123.01(A)(1)(c)(xx) provides:

> The person has the right to end the relationship with the other contracting party without incurring liability pursuant to an employment contract or agreement.

{¶ 83} As to Factor No. 10, the Committee held:

> There is no indication that any of the individuals would incur liability if the relationship ended.

{¶ 84} Relator challenges the committee's finding by pointing to Buyer's testimony that he had no employment contracts or agreements with the individuals that he hired.

{¶ 85} According to relator, R.C. 4123.01(A)(1)(c)(xx) requires "written employment contracts or agreements" for that provision to be applicable.  The magistrate

disagrees with relator's interpretation of the statutory provision.  The statutory provision does not require a *written* contract or agreement.  Thus, relator's argument must fail.

{¶ 86} Based upon the above analysis, the magistrate concludes that the bureau appropriately found that 10 of the statutory criteria support a finding that the workers hired by WFAL were employees of WFAL.

{¶ 87} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
KENNETH W. MACKE

NOTICE TO THE PARTIES

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).